UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| MARY B. ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 17-134-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the cross-motions for summary judgment filed by Plaintiff Mary Ross and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security. [Record Nos. 11, 14] Ross contends that the administrative law judge ("ALJ") assigned to her case erred by denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [Record Nos. 11, 12] She asks the Court to reverse the ALJ's decision and award her benefits or remand the case for a new hearing. [Record No. 12, p. 15] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 14] For the reasons that follow, the Court will grant the Commissioner's motion and deny the relief sought by Ross.

**I.**

Ross protectively filed applications for DIB under Title II and SSI under Title XVI of the Social Security Act on July 31, 2014, alleging a disability onset date of July 25, 2014. [Administrative Transcript, "Tr.," 226, 228] Her applications were denied initially and upon

reconsideration. [Tr. 122-25, 158-61, 167-80] Thereafter, an administrative hearing was held before ALJ Jack Penca. [Tr. 62-97] ALJ Penca issued a written decision denying the claims on September 14, 2016. [Tr. 46-61] The Appeals Council declined Ross' request for review. [Tr. 1-6] Ross has exhausted her administrative remedies and the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Ross was 52 years old at the time her disability allegedly began, and 54 years old at the time of the administrative hearing. [Tr. 65, 67, 226, 228] She has a ninth grade education and past relevant work as a retail and convenience store cashier, stock personnel, department head, and assistant manager. [Tr. 65, 67, 71-74] Ross was employed most recently by a newspaper from 2010 to 2014, where her job duties included taking photographs, conducting interviews, writing articles, making phone calls about subscriptions, and cleaning the office. [Tr. 68-71] Her job duties required that she travel to photoshoots, sit at a desk for long periods of time, and lift boxes filled with paper and books. [*Id.*] Ross testified that she stopped working at the newspaper around the time of her alleged disability onset date (July 25, 2014) and shortly before undergoing a total knee replacement. [Tr. 75]

Ross was treated for knee and back pain for several months prior to her alleged disability onset date. [*See* Tr. 386-400, 473-80.] An MRI of Ross' lumbar spine from May 2, 2014, revealed moderate degenerative joint disease, mild central herniation at L4-L5, moderate central herniation at L5-S1, and mild annular bulge at L2-L3 and L3-L4. [Tr. 402] An MRI and x-ray of Ross' left knee indicated meniscal tears and arthritic changes. [Tr. 403, 460] Ross was advised on June 11, 2014, that she would benefit from a total knee arthroplasty, and she elected to proceed with the surgery. [Tr. 455-60] She underwent a total left knee arthroplasty on September 9, 2014. [Tr. 424-32]

After Ross elected to have surgery but before the surgery was performed, Warren G. Stumbo, M.D., found that Ross was unable to continue her work at the newspaper due to her back, hip, and left knee pain, and advised her that she would likely need to file for disability. [Tr. 473-76] Ross filed for disability approximately 10 days later (on July 31, 2014). [Tr. 226, 228] Stumbo completed a check-box Medical Source Statement on August 15, 2014, noting diagnoses of a meniscus tear in the knee, chronic lower back pain, and degenerative disc disease/degenerative joint disease, with Ross complaining of "pain back, knee, difficulty stooping, climbing or squatting." [Tr. 406] Stumbo identified a reduced range of motion in Ross' knee with positive signs including joint warmth and deformity, impaired sleep, tenderness, crepitus, and swelling. He further found that Ross' symptoms and functional limitations were exacerbated by anxiety and depression. [Tr. 406-07] Stumbo also stated that Ross was subject to a marked limitation in her ability to deal with stress. [Tr. 407]

Overall, Stumbo believed that it was not necessary for Ross to elevate either leg while sitting and that she could sit for 15 minutes at a time and a total of three hours out of an eight hour workday; stand or walk for 30 minutes at a time and a total of three hours out of an eight hour workday; but needed to rest for two hours out of an eight hour workday. [Tr. 407-09] Ross could lift and carry up to 10 pounds frequently but never more than 20 pounds, and she could occasionally stoop. [Tr. 409] Stubmo believed that Ross would be absent from work more than three times a month because of her impairments and treatment. [Tr. 410]

Keith Hall, M.D., performed the left total knee replacement on September 9, 2014. [Tr. 426-27] Post-surgical imaging over the next year showed anatomical alignment with no evidence of hardware complication, no definite effusion, no fracture, dislocation, or aggressive bone abnormality, and unremarkable soft tissue. [Tr. 416, 428, 615, 617] Although Ross

reported some occasional swelling with increased activity that was made better by rest, she stated that she was very pleased with her knee, felt much improvement from prior to surgery. Ross was advised that she could "increase activities as tolerated and resume a normal lifestyle." [Tr. 620, 627, 631]

State agency physician P. Saranga, M.D., reviewed Ross' medical records and completed a residual functional capacity ("RFC") assessment on September 29, 2014. [Tr. 106-07] Saranga found that Ross could lift and carry 20 pounds occasionally and 10 pounds frequently, sit and stand or walk for about six hours in an eight hour workday, frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds. [Tr. 106] Saranga believed that Ross had an unlimited capacity to balance, could frequently stoop and kneel, and could occasionally crouch and crawl, with no manipulative or environmental limitations. [*Id.*]

Ross reported lower back and hip pain to Stumbo again on November 3, 2014, "to the point she can barely walk, sit, or lie down." [Tr. 468] Stumbo conducted a physical examination, and found that more physical therapy was necessary to rehabilitate Ross' knee. [Tr. 469-70] State agency physician Sudhideb Mukherjee, M.D., reconsidered Ross' RFC in light of the records from this visit, and agreed with Saranga's assessment. [Tr. 135-36]

Ross continued to report back and knee pain, and Stumbo continued to believe that Ross was disabled. Ross reported increased hip pain on January 28, 2015, and an x-ray revealed trochanteric abnormal osteophytes primarily on the right hip, and some calcification in the artery. [Tr. 551-53] Ross was given a steroid injection to reduce the pain. [Tr. 553] Ross returned on March 3, 2015, and reported that the steroid shots helped, but only for a few days. [Tr. 547] She stated that she had been turned down twice for disability, and had a lot of

stress and worry due to her upcoming appeal. [Tr. 549] Stumbo stated that Ross was "not able to work" due to back pain. [*Id.*]

Ross reported pain in her shoulder joints causing difficulty bending over, lifting, and doing house work on January 25, 2016. [Tr. 526] Either Stumbo or Laura Faughn, M.D., reviewed the x-rays of Ross' hip, lumbar spine, and cervical spine, and found significant kyphosis, c-spine osteophytes, severe right hip degenerative joint disease, and severe limitation to spine range of motion.[1] [Tr. 528] The treatment notes again stated that Ross was "permanently disabled for any gainful employment," and also noted that Ross was depressed. [*Id.*] Stumbo stated on February 23, 2016, that Ross continued to be disabled and was "obvious[ly] not able to be gainfully employed." [Tr. 522] Most recently, Ross tripped over her dog twice in mid-2016, resulting in pain and swelling. [Tr. 574-76] Stumbo stated that the injury should heal in one week, and Ross subsequently stated that the swelling had resolved and the pain had decreased. [Tr. 32, 576]

Ross testified during the administrative hearing that her knee continued to swell, particularly if she stands or walks a lot, and that she sometimes experiences a needle-like pain in her knee. [Tr. 75-77] She elevated her left leg two to three times per day to reduce the swelling. [Tr. 76-77] She also had back spasms and experienced intense pain across her lower back approximately four to five times per day. [Tr. 78-79] Ross stated that she frequently has to change position as a result of her leg and back pain, and estimated that she can continuously sit for about 20 to 30 minutes, stand for about 15 min, and walk for about 15 to 20 minutes. [Tr. 75-76]

---

[1] Stumbo is listed as the treating provider, but the notes are electronically signed by Faughn.

Ross also testified that she suffers from neck and hip pain, right heel spurs, depression, a thyroid condition, and difficulty concentrating. [Tr. 79-82] She enjoys reading but has to take breaks periodically. [Tr. 82] She enjoys coloring. [Tr. 86-87] Ross stated that she can no longer wash windows or take walks through the hills to photograph trees and flowers, but she continues to sweep, mop, and mow her lawn with a self-propelled mower, although those tasks now take longer to complete. [Tr. 84-86] She washes dishes, does her own laundry, and divides the remaining housework with her mother. [Tr. 88]

ALJ Penca issued a decision on September 19, 2016, concluding that Ross was not disabled during the relevant period. [Tr. 55] He found that Ross has the following severe impairments: degenerative disc disease of the lumbar spine and osteoarthritis of the left knee. [Tr. 48] He also found that Ross' gastroesophageal reflux disease, hypertension, peptic ulcer, and/or hypothyroidism were non-severe impairments because there was no evidence that they would impose any significant restrictions on Ross' ability to perform basic work activities. [*Id.*] The ALJ also found that Ross' depression was not a severe impairment because it did not cause more than a minimal limitation in Ross' ability to perform basic mental work activities. [Tr. 49] In particular, the ALJ noted that Ross could take care of her personal needs, shop in stores, and do some household chores; attend church, Sunday school, and Bible study; is able to drive, pay bills, handle a savings account, count change, use a checkbook/money orders, and play games on the computer; and has experienced no episodes of decompensation which have been of extended duration. [*Id.*]

ALJ Penca then found that Ross has the RFC to perform light work, except that she can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch and crawl, and be exposed to extreme cold,

vibration, and hazards. [Tr. 50] The ALJ noted that imaging of Ross' lumbar spine showed moderate degenerative joint disease, a mild central herniation at L4-L5, a moderate central herniation at L5-S1, and a mild annular bulge at L2-L3. [Tr. 51] However, only the January 25, 2016, treatment notes completed by Stumbo or Faughn showed severe limitation in spine range of motion. [*Id.*] Otherwise, the physical examination findings generally showed "no significant abnormalities, including normal motor function, gait, stance, and reflexes." [*Id.*] The ALJ further noted that post-surgical imaging showed "anatomical alignment with no evidence of hardware complication, no definite effusio, and only mild tricompartmental degenerative change. [Ross] did well following the surgery, reporting decreased pain. The physical examination findings showed no significant abnormalities." [*Id.*]

ALJ Penca concluded that Ross' medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence. [Tr. 51] In particular, he found no support for Ross' claims that she must elevate her leg above her heart two or three times a day or that she is limited in her sitting and walking. [Tr. 52] He also found that her claim of neck pain was inconsistent with records showing full range of motion in the neck, and that the only recent complaint of knee pain was when she tripped over her dog, but even then no effusion of the knee was noted. [*Id.*]

As for the opinion evidence, ALJ Penca gave no weight to the Medical Source Statement Stumbo completed on August 15, 2014, because it "was given before the claimant's knee replacement surgery in September 2014 and subsequent medical evidence, including Dr. Stumbo's examination findings, show she has done well since her surgery." [*Id.*] The ALJ also afforded no weight to the opinions stated by Stumbo, and possibly Faughn, that Ross is

-7-

unable to work and permanently disabled from any gainful employment. [*Id.*] The ALJ found that these opinions were unsupported by the objective medical and physical examination findings as a whole and that, because determination of disability is an issue reserved to the Commissioner, "even a treating source opinion with regard to whether an individual is disabled can never be entitled to controlling weight or given special significance." [*Id.* (citing Social Security Ruling ("SSR") 96-5p)] The ALJ gave some weight to the state agency medical consultants' opinions, but "provided additional limitations in the RFC to account for all of the claimant's impairments." [*Id.*] Finally, the ALJ gave no weight to Third Party Function Reports submitted by Ross' mother, because the limitations stated were unsupported by the objective medical and physical examination findings. [Tr. 53]

ALJ Penca found that Ross was unable to perform her past relevant work based on the vocational expert's testimony and an RFC of light work with additional limitations. [Tr. 53] However, he found that there were jobs that existed in significant numbers in the national economy that Ross could perform, such as cashier, sales attendant, and commercial cleaner. [Tr. 54-55] As a result, the ALJ concluded that Ross was not disabled. [Tr. 55]

## II.

A "disability" is defined under the Social Security Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). The burden shifts to the Commissioner with

respect to the fifth step if the claimant satisfies the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f), 416.920(f).

If the claimant's impairments prevent her from doing her past relevant work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work under the fifth step of the analysis. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III**.

Ross argues that ALJ Penca's decision was deficient because he failed to properly evaluate the following treating source opinions: (i) Strumbo's Medical Source Statement from August of 2014; and (ii) the statements by Stumbo and Faughn that Ross was unable to work and permanently disabled from any gainful employment. [Record No. 12, pp. 9-14]

The regulations in place at the time of ALJ Penca's decision provide that a treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case." 20 C.F.R. § 404.1527(c)(2). However, a treating physician's opinion may be discounted "if there is substantial medical evidence to the contrary or the physician provided a conclusory opinion that claimant is unable to work," or the opinion "was inconsistent with other evidence in the record or the assessment relied on subjective symptoms without support of objective findings." *Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 426 (6th Cir. 2014) (citing *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012)); *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The

ALJ . . . is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

If the ALJ does not give a treating source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

The ALJ must provide "good reasons" for discounting the weight given to a treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).[2] These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)). This requirement allows claimants to understand the disposition of their cases, and facilitates meaningful review of the ALJ's application of the treating physician rule. *Id.* at 544-45.

The good reasons requirement is not excused simply because an ALJ's decision is supported by substantial evidence. *Id.* at 546. However, an ALJ's failure to provide good reasons may be harmless error when the ALJ has met the goal of § 1527(c) even though he did not comply with its terms, for example by "indirectly attacking the 'supportability' of the doctor's opinion, § 404.1527(d)(3), or the 'consistency' of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, *see*

---

[2] This regulation is now found at 20 C.F.R. § 404.1527(c)(2).

§ 404.1527(d)(3)."[3] *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). The critical inquiry here is not whether the ALJ did reject the treating physician's opinion, but whether the ALJ implicitly provided sufficient reasons for rejecting it. *Hall*, 148 F. App'x at 456.

ALJ Penca explained that he gave no weight to the Medical Source Statement Stumbo completed on August 15, 2014, because it "was given before the claimant's knee replacement surgery in September 2014 and subsequent medical evidence, including Dr. Stumbo's examination findings, show she has done well since her surgery." [Tr. 52] Ross does not contest that this is a sufficient explanation for rejecting the portion of Stumbo's opinion pertaining to Ross' knee impairment. However, Ross contends that Stumbo's opinion was also based in part on Ross' back pain, and that the ALJ failed to provide sufficient reasons for rejecting that aspect of the opinion. [Record No. 12, pp. 10-11]

Ross is correct that the Medical Source Statement references a diagnosis for chronic lower back pain with degenerative disc disease/degenerative joint disease in addition to Ross' knee impairment. [Tr. 406] However, the form only notes a reduced range of motion in Ross' knee, and it is unclear to what extent the RFC is based on Ross' back pain as opposed to her knee pain. [*Id.*] Moreover, a check-box Medical Source Statement by itself provides only weak evidence. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")).

---

[3] These regulations are now located at 20 C.F.R. § 404.1527(c)(3)-(4).

Ross relies on the MRI of her lumbar spine indicating moderate degenerative joint disease, mild central herniation at L4-L5, moderate central herniation at L5-S1, and mild annular bulge at L2-L3 and L3-L4, to provide objective support for the limitations stated in the Medical Source Statement. [Record No. 12, pp. 10-11 (citing Tr. 402)] However, state agency physicians Saranga and Mukherjee reviewed this same evidence after the knee replacement surgery, and found that Ross' RFC was not nearly as limited as Stumbo had stated. [Tr. 106, 135-36] Further, ALJ Penca explained that "the physical examination findings [regarding Ross' back impairment] generally show[ed] no significant abnormalities, including normal motor function, gait, stance, and reflexes." [Tr. 51] As a result, any error in failing to specifically address the portion of Stumbo's Medical Source Statement that was based on Ross' back pain was harmless, because the ALJ indirectly attacked the supportability of that opinion and its consistency with the record as a whole. *See Hall*, 148 F. App'x at 464 (citing 20 C.F.R. § 404.1527(d)(3)-(4)).

Further, the ALJ correctly noted that determination of disability is an issue reserved to the Commissioner, and that "even a treating source opinion with regard to whether an individual is disabled can never be entitled to controlling weight or given special significance." [*Id.* (citing SSR 96-5p)] The Sixth Circuit has explained that "the Commissioner may reject conclusory treating-physician opinions in favor of consulting-physician opinions that are supported by substantial evidence." *West v. Comm'r Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). And that is what happened here. The ALJ rejected the conclusory statements made by Ross' treating physicians, and instead relied on the RFC assessments submitted by Saranga and Mukherjee, as well as the objective medical evidence provided by her x-rays and MRI. [Tr. 50-53] This is permissible.

The ALJ went on to state that the conclusory statements that Ross is disabled were "unsupported by the objective medical and physical examination findings as a whole," and cited generally to eight exhibits. [Tr. 52] Ross argues that this statement was overly broad because the exhibits cited by the ALJ contained abnormal findings such as joint and muscle tenderness and limited movement of the extremities.[4] [Record No. 12, p. 13] However, these same findings were present in the records reviewed by Saranga and Mukherjee. [*See* Tr. 470, 474-75, 560] The ALJ was entitled to reject the conclusory statements by Ross' treating physicians in favor of the opinions stated by Saranga and Mukherjee.

Finally, the ALJ's decision was supported by substantial evidence, including Ross' MRI and x-ray results, and the RFC assessments submitted by Saranga and Mukherjee. Although Ross correctly notes that there is evidence in the record that would have supported a contrary finding, the Court is "not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Bass*, 499 F.3d at 509)).

---

[4] Ross also argues that she was denied a full and fair hearing because the ALJ did not expressly address these findings in rejecting the conclusory statements that she was disabled. [Record No. 12, pp. 14-15] But there is no suggestion that Ross received an unduly truncated hearing, or that the ALJ failed to review her records. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). Nor is there any suggestion that the ALJ completely ignored the conclusory opinions that Ross was disabled. *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010) ("[T]he ALJ may not entirely ignore such an opinion[.]"). The ALJ was only required to "explain the consideration given to the treating source's conclusory opinion." *Id.* (quotation marks and citations omitted). The ALJ satisfied that requirement. *See id.* (finding that an ALJ's decision was adequate where it noted "that the opinion spoke to an issue reserved to the Commissioner and that the opinion ultimately expressed uncertainty as to [the claimant's] inability to work").

## IV.

The ALJ either provided good reason for the weight he gave to each of Ross' treating physicians' opinions or indirectly attacked the support of those opinions and their consistency with the record as a whole. The ALJ adequately explained the consideration given to the conclusory statements that Ross was disabled. And the ALJ's finding is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Berryhill's Motion for Summary Judgment [Record No. 14] is **GRANTED**.

2. Plaintiff Ross' Motion for Summary Judgment [Record No. 11] is **DENIED**.

3. The Commissioner's administrative decision will be **AFFIRMED** by a separate Judgment entered this date.

This 2nd day of March, 2018.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge